UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WILLIAM S. STANO, an individual,<br><br>Plaintiff,<br><br>v.<br><br>AUGUSTAR LIFE ASSURANCE CORPORATION,<br><br>Defendant. | Case No. 1:25-cv-00215-DKG<br><br>**MEMORANDUM DECISION AND ORDER** |

**INTRODUCTION**

Plaintiff Dr. William Stano, DPM, brought this action as an insured against insurer AuguStar Life Assurance Corporation ("AuguStar"), following AuguStar's denial of Stano's claims for total disability under two disability insurance policies and a related life insurance policy.

Presently before the Court is AuguStar's Motion for Summary Judgment. (Dkt. 11). The motion is fully briefed and ripe for the Court's consideration.[1] Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay,

---

[1] The parties have consented to proceed before a United States Magistrate Judge in this matter pursuant to 28 U.S.C. § 636(c)(1) and Local Civil Rule 72.1(a)(1).

and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, the Court will decide the motion based on the record.[2] Dist. Idaho. Civ. Rule 7.1(d). For the reasons that follow the Court will deny the motion.

### FACTUAL AND PROCEDURAL BACKGROUND[3]

Dr. Stano, DPM, is a podiatric surgeon who began his podiatric surgery practice in 1988. (Dkt. 14-1 at ¶¶ 1–2). Stano submitted applications for disability insurance in 1989, and life insurance in 1993, to AuguStar[4]. (Dkt. 14-1 at ¶¶ 4–6). Stano was issued three insurance policies: Disability Income Policy H6105452 ("Policy 1"), issued May 16, 1989 (Dkt. 1-2 at 20–41) and Disability Income Policy H6124996 ("Policy 2"), issued May 16, 1991 (Dkt. 1-2 at 43–62) (collectively "Disability Policies"); and Life Insurance Policy 6136583 ("Life Insurance Policy"), issued February 15, 1993 (Dkt. 1-2 at 63–82).

### 1.    Relevant Policy Terms

### a.    Policy 1 and 2

The Disability Policies purport to pay the insured "on receipt at our home office of due proof that you are Totally Disabled." (Dkt. 1-2 at 20, Policy 1; Dkt. 1-2 at 43, Policy

---

[2] Defendant requested oral argument on this motion. (Dkt. 11). Applying its discretion, the Court finds that oral argument is not necessary. Dist. Idaho Civ. R. 7.1(d); *Bach v. Teton Cnty. Idaho*, 207 F. App'x 766, 769 (9th Cir. 2006).

[3] Consistent with the standard on summary judgment, the factual background is written to reflect that all evidence in the record is construed in a light most favorable to the non-moving party, who is also given the benefit of all reasonable inferences which can be drawn from that evidence.

[4] The policies were issued by Ohio National Life Assurance Corporation, which is AuguStar's former name. *See* Dkt. 7 at ¶¶ 16–17, 19.

2). Total Disability is defined separately in each respective policy. Policy 1 defines Total

Disability as follows:

> You are Totally Disabled or have a Total Disability if: (a) you are not able
> to do the substantial and material tasks of your own job due to Injury or
> Sickness; and (b) you are under a Physician's care. You do not need to be
> under a Physician's care on a regular basis if you can show that further
> recovery is not expected for you. You are not Totally Disabled if you are
> working at your own job and are earning more than 25% of your Monthly
> Earnings Before Disability.

(Dkt. 1-2 at 24, Policy 1). Policy 2 defines Total Disability, in relevant part, as follows:

> You are Totally Disabled or have a Total Disability if due to Injury or
> Sickness:
> (a) you are not able to do the duties of any occupation which you may
> reasonably be expected to engage in because of education, training, or
> experience; and
> (b) you are under a Physician's care. You do not need to be under a
> Physician's care on a regular basis if you can show that further recovery is
> not expected for you.

(Dkt. 1-2 at 47, Policy 2).

The Disability Policies include the following terms regarding the claim process for

an insured to provide the requisite proof of disability for a claim for benefits:

> **Notice of Claim:**
> You must give us written notice of a claim within 180 days after an Injury
> or Sickness, or as soon as you reasonably can. Notice must be sent to our
> home office or to one of our agents.
> **Claim Forms**
> Within 10 working days after we get your notice, we will send you claim
> forms. If we do not, you can send us your own written proof of Disability.
> You must show the kind and extent of your Injury or Sickness and the
> Disability that has occurred.

(Dkt. 1-2 at 27, Policy 1); (Dkt. 1-2 at 49, Policy 2) (containing a nearly identical

statement, deviating only where it refers to "Total Disability" rather than "Disability").

**MEMORANDUM DECISION ORDER - 3**

The deviation between the terms of the Disability Policies is more pronounced in the respective Proof of Loss sections. Policy 1 provides the following terms:

**Proof of Loss**
You must send us proof of Disability: (a) within one year of your Injury or Sickness; and (b) within 90 days after any time for which income is to be paid. Your claim will not be reduced or denied if you could not reasonably give proof on time. But, in that case, you should send proof as soon as you reasonably can do so. You do not have to send proof of Disability as long as you do not have legal capacity to do so.
We can require proof of your loss of Earnings. Such proof can include copies of your federal income tax returns.

(Dkt. 1-2 at 27, Policy 1). Whereas, Policy 2 provides the following terms:

**Proof of Loss**
Written proof of loss must be sent to us within 90 days after the end of a period for which we are liable. If that is not reasonably possible, your claim will not be affected. But, unless you are legally incapacitated, written proof must be given within one year after the 90 days.
We will require proof of your loss of Earnings. Such proof can include but is not limited to copies of your federal income tax returns

(Dkt. 1-2 at 49, Policy 2).

### b.      Life Insurance Policy

The Life Insurance Policy benefit provides that, upon the notice of a claim for disability and proof of disability, the plan will convert from a term to a whole life plan, and premiums will be waived. (Dkt. 1-2 at 76, Life Insurance Policy); (Dkt. 1-2 at 81–82, Life Insurance Policy, Waiver of Premium for Total Disability Rider).

The Life Insurance Policy provides that the insured must give notice of a claim for disability during the time they are disabled, and proof of disability within six months of the notice of disability claim. *Id*. at 82. It also describes the requisite proof of disability that an insured must provide:

MEMORANDUM DECISION ORDER - 4

> We will send you the required forms for proof of Disability. If we don't, you may give proof in any fair way. As part of proof, we may require that you be examined by a doctor of our choice. We will pay for this. After your claim has been approved, we may ask for proof that you are still Disabled before we waive more premiums. We may ask for that proof at any time. . . . If we do not get proof of Disability within the required time, premiums will not be waived. No waiver will be made after we ask for proof which is not given.

*Id.*

### 2.    The Handling of Stano's Claim

On August 9, 2007, Stano was diagnosed with bilateral keratoconus, an eye condition that progressively worsened until March 8, 2019, when he claims he became unable to perform reconstructive foot surgery because his vision failed him. (Dkt. 1-2 at ¶¶ 28–31). On April 25, 2019, Stano's eye condition was diagnosed as "permanent and fixed," and he was thereafter restricted from performing further surgeries by his physician due to the condition. *Id.* at ¶ 32.

Stano notified AuguStar of his claim for disability on April 8, 2019, by submitting a claim for benefits based on the bilateral keratoconus. (Dkt. 11-1 at ¶ 2(a); Dkt. 14-1 at ¶ 13). On the same day, AuguStar responded to Stano in a letter acknowledging its receipt of the notice of the claim and directing Stano to complete several claim forms, including a Claimant's Statement form, an Occupational Duties form, and an Authorization to Obtain Information form. (Dkt. 11-3 at 9).

On April 29, 2019, AuguStar received Stano's completed forms, which were dated April 25, 2019. (*Id.* at 16–26; Dkt. 11-1 at 3; Dkt. 14 at 2). Stano represented on the Claimant's Statement to be the sole proprietor of his business, The Foot Institute of

Idaho, where he was self-employed as a podiatric surgeon; briefly described his occupational duties as reconstructive foot surgery; stated that he was unable to do reconstructive foot surgery since March 8, 2019 due to an eye illness; and listed his treating physician's information. (Dkt. 11-3 at 16–17). On the Occupational Duties form, Stano represented that he normally worked forty hours per week; listed occupational duties to include reconstructive procedures; and reported that he was unable to perform the listed reconstructive procedures due to visual disability preventing him from identifying anatomic structures during surgery. (Dkt. 11-3 at 18). Stano also submitted an Attending Physician's Statement form, which was completed by Dr. Winbigler. (Dkt. 11-3 at 20–21). The form represented that Stano was treated by Winbigler for bilateral keratoconus since August 9, 2007, and that they had tried multiple designs of contact lenses without success. *Id*. Winbigler further represented that Stano's vision was not good enough to perform detailed surgery as of March 8, 2019, and noted "Premanent [sic] and fixed" in the additional comments or progress box. *Id.* Affixed to the Attending Physician's Statement form were several ocular medical records. Stano also submitted a completed Authorization to Obtain Information form, authorizing the disclosure of his medical records and Social Security information to AuguStar for the purpose of determining eligibility for its insurance policy benefits. (Dkt. 11-3 at 26).

**MEMORANDUM DECISION ORDER - 6**

One day after receiving the completed forms, on April 30, 2019, AuguStar sent a letter to an attorney it believed represented Stano. (Dkt. 11-3 at 28–31).[5] The letter included excerpts from Policy 1 and 2 regarding definitions and claims procedures; recognized that Stano submitted claim forms "claiming Total Disability since March 8, 2019 due to bilateral keratoconus from an occupation of podiatric surgeon"; and stated that AuguStar required additional proof of loss to assist in its claim evaluation for any benefit eligibility under the terms of the policies. *Id.* In this letter, AuguStar requested Stano to forward the following information and documentation:

- A written statement explaining the current status of The Foot Institute Of Idaho. If the practice has been sold please provide a copy of the Purchase and Sales agreement (or like documentation).
- A written statement explaining Dr. Stano's work involvement/duties (if any) at The Foot Institute Of Idaho since March 8, 2019.
- On a monthly basis, documentation evidencing Dr. Stano's work activity from March 1, 2018 through the present. This should include, but is not limited to, the number of patients seen and number/type of services/treatments performed by Dr. Stano (i.e. CPT Codes). If possible, please provide production reports in an electronic format by exporting the production data to an Excel file or to a file that can be imported into Excel (a tab-delimited or comma-delimited file).
- 2018 1040 U.S. Individual Income Tax Returns with all W-2s, schedules, and attachments.
- Documentation of monthly earnings (i.e. Profit & Loss, Income Statements or like financial reports) from March 2018 through the present.
- A copy of Dr. Stano's application for Social Income benefits.
- Documentation to determine Dr. Stano's Monthly Earnings Before Disability, as described below.

---

[5] On May 6, 2019, Stano emailed AuguStar asking it to contact him directly rather than through the attorney. (Dkt. 11-3 at 33–34). AuguStar responded to Stano via email on May 7, 2019, attaching a copy of the letter and confirming future communications would be addressed to him. *Id.*

**MEMORANDUM DECISION ORDER - 7**

1. Method (A) If you wish to use his average compensation in the 12 months prior to disability, we will need documentation of monthly earnings (i.e. Profit & Loss statements, etc) for the 12 months immediately preceding March 2018 (March 2018 through February 2019); or

2. Method (B) If you choose to use his highest average compensation per month for any 24 months in a row in the 5 years before your disability began, we will need documentation of monthly earnings (i.e. Profit & Loss statements, etc.) and Federal Income Tax Returns, both Individual and Corporate (if applicable), including all W-2s, schedules, and attachments, for any 24 month period out of the 5 years immediately preceding March 2019 (March 2013 through February 2019).

(Dkt. 11-3 at 30–31). In addition to the requested information and documentation, AuguStar also advised Stano that it had requested copies of his medical records from Winbigler in accordance with the release Stano signed. *Id.*

After several other communications between the parties, Stano submitted a memo to AuguStar on June 19, 2019, titled "Proof of Loss of Earnings Surgical Income Statement." (Dkt. 11-3 at 49–50). The memo included a spreadsheet titled "Proof of Loss of Earnings," which listed the dates of surgical services, CPT codes, total amounts charged and paid, and the facility where the surgeries were located for the requested time period between March 2018 – June 2019. *Id.* It also included a statement that Stano's social security application was in process and awaiting further clarification from AuguStar, referring to questions Stano had asked AuguStar via email on May 31, 2019, which AuguStar declined to answer via email, instead insisting on speaking over the phone or in person. (Dkt. 11-3 at 46–47).

Upon the receipt of Stano's memo and spreadsheet, AuguStar responded in a letter dated June 25, 2019, which stated Stano had not meet his "burden of proof" to support

**MEMORANDUM DECISION ORDER - 8**

the Total Disability benefit eligibility, and again requested additional proof of loss. (Dkt. 11-3 at 52–56). This letter explained that Stano's memo and spreadsheet did not support the representation Stano made in the claim forms that he worked forty hours per week prior to claiming disability, that the information provided indicated that Stano likely performed other occupational duties not listed in the claim forms, and that an assessment of his residual or partial disability benefit may be more appropriate. *Id.* The letter again requested Stano furnish proof of duties performed to account for the forty hours per week he reported. *Id.*

After several more unanswered communications from AuguStar, it sent a letter to Stano on October 2, 2019, denying his claim based on the information available. (Dkt. 11-3 at 64).

On October 1, 2024, Stano filed a Complaint in the District Court of the Fourth Judicial District of Idaho, alleging seven causes of action against AuguStar[6] for declaratory judgment, estoppel, and breach of contract related to the denial of his claim for total disability on the three policies. (Dkt. 1-2). On April 16, 2025, AuguStar removed the action to this Court on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332. (Dkt. 1).

---

[6] In addition to AuguStar Life Assurance Corporation, the Complaint also named Ohio National Financial Services, Inc., Constellation Holdings, Inc., and AuguStar Life Insurance Company as Defendants. (Dkt. 1-2). The parties subsequently stipulated to dismiss the three other entities, leaving AuguStar Life Assurance Corporation ("AuguStar") as the sole remaining Defendant in this action. (Dkt. 4, 5).

**MEMORANDUM DECISION ORDER - 9**

**STANDARD OF LAW**

This case is before the Court based on diversity jurisdiction, pursuant to 28 U.S.C. § 1332. (Dkt. 1). "[F]ederal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)).

Here, "[t]he 'procedural aspects of summary judgment' are governed by the Federal Rules of Civil Procedure, and 'the law of the forum controls the substantive issues.'" *Cuprite Mine Partners LLC v. Anderson*, 809 F.3d 548, 554 (9th Cir. 2015) (quoting *Caesar Elecs., Inc. v. Andrews*, 905 F.2d 287, 290 n.3 (9th Cir. 1990)). Summary judgment is appropriate where a party demonstrates that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is a fact "that may affect the outcome of the case." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact and a favorable judgment is due as a matter of law. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In evaluating whether the moving party has met this burden, the Court views the evidence in the light most favorable to the non-moving party and the Court must not make credibility findings. *Anderson*, 477 U.S. at 255. If the moving party satisfies its initial burden, the non-moving party must identify facts sufficient to show a genuine issue for trial to defeat the motion for summary judgment.

*Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000).

The non-moving party must go beyond the pleadings and show "by…affidavits, or by the

depositions, answers to interrogatories, or admissions on file," that a genuine dispute of

material fact exists. *Celotex*, 477 U.S. at 324. The Court must grant summary judgment if

the non-moving party "fails to make a showing sufficient to establish the existence of an

element essential to that party's case, and on which that party will bear the burden of

proof at trial." *Id.* at 322.

### DISCUSSION

AuguStar seeks summary judgment on each of Stano's claims on the basis that

Stano did not provide the required proof of loss necessary for AuguStar to evaluate the

claim. (Dkt. 11). Stano argues he substantially complied with the policies and that the

adequacy of the proof of loss provided is a factual question improperly disposed of on

summary judgment.[7] (Dkt. 14).

### 1.    Breach of Contract – Claims 5, 6, and 7

"The elements for a claim for breach of contract are: (a) the existence of the

contract, (b) the breach of the contract, (c) the breach caused damages, and (d) the

amount of those damages." *Mosell Equities, LLC v. Berryhill & Co., Inc.*, 297 P.3d 232,

---

[7] Stano argues that several of AuguStar's exhibits contain hearsay and cannot be presented in an admissible form and, therefore, should not be considered on summary judgment. (Dkt. 14 at 4–5) (citing Fed. R. Civ. P. 56(c)(2)). Here, the Court need not consider the disputed exhibits to rule on summary judgment because they are not material to the Court's ruling. *See Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010) (in the context of a summary judgment, a district court must "rule on evidentiary objections that are material to its ruling"); Roberts *v. Albertson's LLC*, 464 F. App'x 605, 606, 606-07 (9th Cir. 2011) (a court need not rule on objections that are not material to the court's ruling on summary judgment).  Accordingly, Stano's objections to the disputed exhibits are denied without prejudice.

**MEMORANDUM DECISION ORDER - 11**

241 (Idaho 2013). "A condition precedent is an event not certain to occur, but which must occur, before performance under a contract becomes due." *Steiner v. Ziegler Tamura Ltd.*, 61 P.3d 595, 599 (Idaho 2002) (citing *World Wide Lease, Inc. v. Woodworth,* 728 P.2d 769, 776 (Idaho App. 1986)).

The existence and provisions of the insurance contracts here are not in dispute. Rather, the parties dispute whether Stano's claims for breach of contract fail as a matter of law because Stano did not comply with the contractual condition precedent of providing the requisite proof of loss, and whether AuguStar's performance under the terms of the contracts became due. (Dkt. 11-2 at 16).

As noted, the Disability Policies purport to pay the insured "on receipt at our home office of due proof that you are Totally Disabled." (Dkt. 1-2 at 20, Policy 1; Dkt. 1-2 at 43, Policy 2). The parties do not dispute that the insurance policies condition AuguStar's duty to pay on the submission of such proof. The relevant policy language cited herein first requires claim forms to be submitted to AuguStar within a certain time period, or to otherwise show the kind and extent of the insured's injury or sickness and the disability being claimed. (Dkt. 1-2 at 27, Policy 1); (Dkt. 1-2 at 49, Policy 2). Policy 1 refers to proof of loss as proof of disability, and states that AuguStar *can* require proof of loss of earnings such as copies of federal income tax returns. (Dkt. 1-2 at 27, Policy 1).  Policy 2's proof of loss section *requires* written proof of lost earnings, which can include but is not limited to copies of federal income tax returns. (Dkt. 1-2 at 49, Policy 2). The policies

**MEMORANDUM DECISION ORDER - 12**

do not contain a more certain definition or specific requirements for the requisite proof of loss.

When faced with defining "proof of loss" in the absence of a statutory or contractual definition, the Idaho Supreme Court has held, "[t]he documentation is the 'proof,'" and the "explanation of physical and/or financial injury is the 'loss.'" *Brinkman v. Aid Ins. Co.*, 766 P.2d 1227, 1230 (Idaho 1988). "[A] submitted proof of loss is sufficient when the insured provides the insurer with enough information to allow the insurer a reasonable opportunity to investigate and determine its liability." *Greenough v. Farm Bureau Mut. Ins. Co. of Idaho*, 130 P.3d 1127, 1131 (Idaho 2006) (citing *Brinkman*, 766 P.2d at 1230–31).

In *Greenough*, the Idaho Supreme Court noted that the insurance policy at issue did not require the insured to complete and return any particular form for proof of loss, but required a signed, sworn proof of loss. 130 P.3d at 1131. The Court recognized that "the amount of information that should be provided is 'proportional to the amount reasonably available to the insured.'" *Id.* (quoting *Brinkman*, 766 P.2d at 1231). When enough information is provided, the insurer is obligated to "investigate and/or determine its rights and liabilities" in a fair and accurate manner. *Id.* (quoting *Brinkman*, 766 P.2d at 1231). The Court concluded that "[a]n analysis to determine when a proof of loss is sufficient is a question of fact" and remanded the issue for further consideration. *Id.* Both *Brinkman* and *Greenough* defined proof of loss in the context of the prejudgment interest statute Idaho Code § 41-1839.

MEMORANDUM DECISION ORDER - 13

In *Boel v. Stewart Title Guar. Co.*, the Court applied the *Brinkman* definition of proof of loss in a case where, as here, the adequacy of an insured's submission to the insurer was at issue. 43 P.3d 768 (Idaho 2002). In *Boel* the Court explained that "proof of loss need not prove with mathematical certainty the amount of damages sustained by the insured, and it need not conclusively prove the insurer's liability for the claimed loss." *Id.* at 773. There, the Court found that the insureds had "plainly provided" the insurer with a letter that provided the basis for their claimed loss and an explanation of the physical and/or financial resulting injury.  *Id.* at 773.  Accordingly, the Court found the insureds had provided an adequate proof of loss under the policy; that is, "the information was sufficient to give [the insurer] 'an opportunity to investigate and determine its liability' relative to the [insureds'] claimed damages."  *Id.* (citing *Brinkman*, 766 P.2d at 1231).

The question presently before the Court is not whether AuguStar was correct in denying Stano's claims, but rather, whether Stano complied with the policy terms by providing AuguStar "with enough information to allow the insurer a reasonable opportunity to investigate and determine its liability." *Greenough*, 130 P.3d 1131 (citing *Brinkman*, 766 P.2d at 1230–31). The proof of loss sections in the three policies here required Stano to send: (1) proof of disability, which could include proof of lost earnings (Dkt. 1-2 at 27, Policy 1); (2) written proof of loss, which required proof of lost earnings (Dkt. 1-2 at 49, Policy 2); and (3) required forms for disability or to give proof in any fair way, which may require the insured to be examined by a doctor (Dkt. 1-2 at 82, Life Insurance Policy).

Here, like in *Boel*, Stano provided AuguStar with the basis for his claimed loss by submitting the claim for benefits on April 8, 2019, and the completed claim forms on April 29, 2019. (Dkt. 11-1 at ¶ 2(a); Dkt. 14-1 at ¶ 13); (Dkt. 11-3 at 16–26; Dkt. 11-1 at 3; Dkt. 14 at 2). Stano also provided the basis of his disability claim – progressive bilateral keratoconus that prevented him from performing surgery. The claim forms discussed his occupational duties, and provided his medical records and a statement from his treating physician. In response to AuguStar's request for more proof of loss information, Stano further submitted a document titled Proof of Loss of Earnings and Surgical Income Statement, which included a spreadsheet of his surgical services for the date range requested. (Dkt. 11-3 at 49–50).

AuguStar does not dispute that Stano submitted the above information in a timely manner under the insurance policies. Instead, AuguStar argues that such information is insufficient to support Stano's claim of loss and that he was required to submit additional information and/or evidence to support his claim of loss but failed to do so. On this record, whether the information provided by Stano to AuguStar, taken together, is sufficient proof to allow AuguStar to investigate the claims and determine its liability under the policies is a question of material fact inappropriate for resolution on summary judgment. *See Greenough*, 130 P.3d 1131. AuguStar's reliance on unpublished authority outside of this Circuit to argue otherwise is not persuasive, especially given the applicable substantive decisions from the Idaho Supreme Court. Accordingly, AuguStar's

**MEMORANDUM DECISION ORDER - 15**

motion for summary judgment is denied as to Stano's breach of contract Claims 5, 6, and 7.

**2.      Declaratory Judgment – Claims 1, 2, and 3**

AuguStar moves for summary judgment on Claims 1, 2 and 3 for declaratory judgment based on the theory that Stano cannot prevail on these claims because "he failed to comply with the conditions of his policies that he provide proof of loss."  (Dkt. 11-2 at 19). As discussed above, the Court has found a material issue of fact as to whether Stano provided enough information to AuguStar to satisfy his contractual duty to provide proof of loss under each of the policies.  Accordingly, AuguStar's motion for summary judgment is denied as to Claims 1, 2 and 3.

**3.      Estoppel – Claim 4**

AuguStar also moves for summary judgment on Stano's Claim 4 for Estoppel, arguing that such a claim must be dismissed as a matter of law because Stano "cannot utilize estoppel 'to write a new contract of insurance' that does not require that he provide proof of loss to establish his claim." (Dkt. 11-2 at 20).  For the same reasons that AuguStar's motion for summary judgment fails on the other claims, its motion is denied as to Claim 4.

**ORDER**

THEREFORE, IT IS HEREBY ORDERED that Defendant's Motion for Summary

Judgment (Dkt. 11) is **DENIED**.

IT IS FURTHER ORDERED that the parties must confer and submit a joint

statement as to how they intend to proceed in this matter on or before June 1, 2026.

DATED: May 4, 2026

Honorable Debora K. Grasham
United States Magistrate Judge

MEMORANDUM DECISION ORDER - 17